E-FILED
Thursday, 06 October, 2011 04:07:57 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| ELENA PANTOJA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 10-CV-1184 |
| | ) |
| MONTEREY MUSHROOMS, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendant Monterey Mushrooms, Inc.'s (Monterey) Motion for Summary Judgment (d/e 23) (Motion). Plaintiff Elena Pantoja alleges that Monterey retaliated against her by firing her for requesting leave to care for her ill mother, in violation of the Family Medical Leave Act (FMLA) 29 U.S.C. § 2601 et seq. Monterey removed the case to this Court, and the parties consented, pursuant to 28 U.S.C. § 636(c), to have this matter proceed before this Court. Notice of Removal  (d/e 1); Consent to Proceed Before a United States Magistrate Judge, and Order of Reference (d/e 11). The Motion has been fully briefed and is ready for determination. For the reasons set forth below, the Motion is ALLOWED.

## STATEMENT OF FACTS

Pantoja worked as a picker for Monterey.[1] She planned to spend her vacation in July 2009 visiting her parents in Mexico. One month before she left to visit her parents, Pantoja spoke to Monterey's Human Resources (HR) Manager Ernesto Ybarra about taking leave to help her sick mother in Mexico. She planned to take a one-month leave. <u>Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment (d/e 24) (Monterey Memorandum)</u>, Statement of Undisputed Fact (Monterey SUF) ¶¶5-6.[2] Pantoja was concerned about losing her job if she took leave. Ybarra told her that she could not lose her job and she had to take care of her mother. He told her that there were family leave laws and not to worry. <u>Ybarra Deposition</u>, at 52-53. Ybarra stated in his deposition that he recalled vaguely telling Pantoja that all she needed was to provide some documentation that her mother was ill. <u>Id.</u> at 57. Safety Coordinator Humberto Villegas was present during the conversation. Villegas directed Pantoja to an HR Assistant to obtain FMLA certification forms. Monterey SUF ¶ 6.

---

[1] The Court states the facts in the light most favorable to Pantoja. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). The Court states these facts only for purposes of this Opinion and recognizes that Monterey may dispute some of the matters stated.

[2] The Court only relies on the Monterey Statements of Undisputed Fact that Pantoja agrees are undisputed. See <u>Memorandum of Law (d/e 28) (Pantoja Memorandum)</u>, at 2-5.

Monterey had a written FMLA policy. Under the policy, employees were required to submit requests for foreseeable FMLA leaves at least thirty days in advance, and as soon as possible for unforeseeable events. Employees were also required to provide a health care provider's statement supporting the FMLA leave request. Monterey SUF ¶ 1. Ybarra stated in his deposition that Monterey did not enforce the thirty day notice requirement, but Monterey preferred to have documentation beforehand. Monterey generally wanted documentation within a week of an emergency request, but did not have a specific turnaround time. Memorandum of Law (d/e 28) (Pantoja Memorandum), Exhibit B, Deposition of Ernesto Ybarra (Ybarra Deposition), at 22, 25. Monterey would allow the person to take fifteen days to get the emergency request filed. Id. at 38-39. Monterey's primary concern was to have a physician certify that the reason for the FMLA leave was bona fide and to determine the date of possible return to work. Id. at 39.

Pantoja states that HR Assistant Cheryl Godina told her that she needed to fill out some paperwork. Pantoja Deposition, at 34. According to Pantoja, HR Assistant Laura Barajas gave Pantoja the papers to fill out. Id. at 34. According to Pantoja, Barajas told her that these were all the papers she needed for the leave. Id. The paperwork was written in Spanish. Pantoja received a fifth grade education in Mexico. She read

Spanish, but not English.  Pantoja Deposition, at 18.  Pantoja attempted to read the Spanish paperwork, but did not understand it.  Id. at 75-76.  She planned to take the papers to Mexico and have her mother's doctor fill them out.  Id. at 34.

Pantoja had some familiarity with the FMLA policy.  In December 2007, Pantoja requested FMLA leave.  She submitted the required certification for that request.  She took approved FMLA leave from December 19, 2007, to January 5, 2008.  She returned to work without any problem.  Monterey Memorandum, Exhibit 6, Deposition of Elena Pantoja (Pantoja Deposition), at 65-66; Exhibit 5, Monterey Leave of Absence Form and FMLA Certification Form.

Pantoja left on her vacation on July 6, 2009.  Her vacation was scheduled to end on July 13, 2009.  She said that Ybarra told her to use up her vacation first before she asked for FMLA leave.  Pantoja Deposition, at 32. Pantoja took the FMLA certification papers to her mother's doctor in Mexico, "So when I went to see the doctor and I gave the doctor all of the documents, and I told her that I needed these documents filled out so I could prove I was here for that purpose."  Id. at 35.  Pantoja secured the doctor's certification and sent the completed FMLA paperwork to Monterey by fax from Mexico on July 13, 2009.  Monterey, however, did not receive the fax.   Monterey SUF ¶ 9.

Pantoja's vacation ended on July 13, 2009. When she did not show up at work, HR Assistant Lara Barajas checked in Pantoja's department to see if anyone knew where she was. Barajas called Pantoja's house but no one answered. Barajas left a message. Barajas also mailed a notice to Pantoja's house indicating that Monterey expected her to return to work on July 13th and that Monterey did not receive any paperwork supporting a FMLA request. The notice dated July 20, 2009, stated, in part,

> Our records reflect that you were to return to work on July 13, 2009 from vacation. It is our understanding that you wanted to exercise your right to FMLA, however, to this date you have failed to provide any documentation from a doctor supporting the reason(s) you require to use your FMLA option. You must provide all the necessary documents before your are able to return to work.
>
> There was three attempts to call the number we have on file for you, messages were left on the machine that picked up.
>
> It is imperative that you call me to work at your earliest convenience.

Monterey Memorandum, Exhibit 14, Letter from Laura Barajas to Elena Pantoja dated July 20, 2009. Monterey did not receive any response from the telephone calls or the letter.[3] Monterey SUF ¶ 17.

---

[3]Ybarra states that he called Pantoja's home and spoke to her daughter. According to Ybarra, the daughter said that Pantoja was not there, but did not say that Pantoja was in Mexico. Pantoja disputes this because her entire family was in Mexico with her on the trip. Monterey SUF ¶ 18; Pantoja Memorandum, at 8; Pantoja Deposition, at 28.

According to Pantoja, her brother called her while she was in Mexico and told her that she needed to call Monterey because she was in trouble at work. Pantoja Deposition, at 35. Pantoja called and spoke to Ybarra. Ybarra does not recall ever receiving a telephone call from Pantoja in July. See Ybarra Deposition, at 69-70. According to Pantoja, Ybarra told her that Monterey did not have the FMLA medical certification from her. Id. at 35, 48-49. Pantoja sent the fax a second time on July 27, 2009. She called several times that day to see if the fax was received. Pantoja's telephone records show a number of calls to Monterey on July 27, 2009. Pantoja Memorandum, Exhibit J Pantoja Cellular Telephone Records for July and August 2009; Pantoja Deposition, at 46-47. According to Pantoja, no one at Monterey ever answered the phone. Pantoja Deposition, at 36. She did not call again while she was in Mexico. Id. at 55. Monterey never received any fax from Pantoja. Monterey SUF ¶ 9.

On August 5, 2009, Monterey mailed a termination notice to Pantoja's home. The notice stated,

> Dear Elena
>
> You have failed to provide us with documentation to certify the reason(s) for your leave form the treating physician. Therefore your employment has been terminated for failing to be available from work and filing to comply with FMLA guidelines on requesting a leave. Should you have any questions, please contact . . . Laura Barajas regarding this matter or Ernesto Ybarra.

Monterey SUF ¶ 20; Monterey Memorandum, Exhibit 15, Letter from Ernesto Ybarra to Elena Pantoja dated August 5, 2009.[4] The parties agree that Monterey terminated Pantoja's employment at this point in time. Monterey Memorandum, at 13; Response, at 20, 21.

Ybarra stated in his deposition that Monterey had a progressive discipline system in place, with six steps of discipline. Dismissal was the sixth and final option. According to Ybarra, Monterey did not use some lesser disciplinary option in Pantoja's situation because he and her supervisors assumed she abandoned her work, "We just felt she had abandoned her work, because she didn't notify us where she was at. So we went to the – to the move to terminate her. We didn't know where she was at." Ybarra Deposition, at 75.

Pantoja returned to Illinois from Mexico on Thursday, August 13, 2009. Pantoja Deposition, at 28.[5] She got her mail on August 13 or 14, 2009, and read the termination notice. She went to Monterey either Friday, August 14th, or Monday, August 17, 2009, and spoke to Ybarra and Barajas. Ybarra told Pantoja that Monterey had not received her fax. Ybarra asked Pantoja for documentation to show that she sent the fax.

---

[4]The Court references Monterey SUF ¶ 19 only for the statement that Monterey sent the notice to Pantoja on August 5. The Court does not rely on other statements in the paragraph that Pantoja disputes. See Pantoja Memorandum, at 8-9.

[5]The Court takes judicial notice that July 13, 2009, was a Thursday.

She did not have any documentation. Monterey SUF ¶ 21; Pantoja Deposition, at 37, 72.

During the meeting, Pantoja took the FMLA certification papers out of her purse. Barajas saw the first page of the papers. According to Barajas, the page she saw was blank. Barajas Deposition, at 47-48. According to Barajas, Pantoja asked if she could still fill out the papers, but Ybarra told her no, that it was too late. Id. at 48. According to Pantoja, the FMLA certification papers were filled out, and she offered to give Ybarra the papers, but he refused. Ybarra was only interested in documentation to prove that she sent the faxes. Without documentation to prove that she sent the faxes, she was too late. Pantoja Deposition, at 37, 72.

On August 18, 2009, Monterey sent a second notice of termination to Pantoja. The notice stated, in part,

> Dear Ms Pantoja,
>
> Effective August 18, 2009 we have terminated your employment for (a) failing to be available for work (b) failing to return to work after your leave of absence (c) willfully failing to adhere to the requirements for granting a leave of absence. (d) failing to notify the company that you would not be returning to work.

Monterey Memorandum, Exhibit 16, Letter from Ernesto Ybarra to Elena Pantoja dated August 18, 2009.

ANALYSIS

At summary judgment, Monterey must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to Pantoja. Any doubt as to the existence of a genuine issue for trial must be resolved against Monterey. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once Monterey has met its burden, Pantoja must present evidence to show that issues of fact remain with respect to an issue essential to her case, and on which she will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In this case, Pantoja alleges one count of retaliation for exercising her rights under the FMLA. Complaint, ¶ 10.[6] At summary judgment, Pantoja can meet her burden of presenting evidence through either the indirect or direct method. Andonissamy v. Hewlett-Packard Co., 547 F.3d 841, 849 (7th Cir. 2008). Pantoja states that she is using the direct method. Memorandum of Law (d/e 28) (Pantoja Memorandum), at 18. Under the

---

[6]Based on the evidence, the claims appear to be more appropriately viewed as an interference claim rather than a retaliation claim. See 29 U.S.C. §§ 2615(a)(1)(C) and 2615(b); Righi v. SMC Corp., 632 F.3d 404, 408 (7th Cir. 2011). The parties, however, have briefed the matter as a retaliation claim. The Court, therefore, will address the matter as a retaliation claim.

direct method, Pantoja must present evidence that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between her protected activity and the adverse employment action. Cracco v. Vitran Express, Inc., 559 F.3d 625, 633 (7th Cir. 2009).

Pantoja argues that she engaged in protected activity by requesting leave for a month to help her sick mother. Monterey responds that Pantoja failed to comply with Monterey's FMLA policy because she did not submit the FMLA certification forms with the health care provider's statement thirty days before she went to Mexico. Monterey may impose reasonable procedural requirements for requesting FMLA leave and may require certification from a health care provider to support the leave request. 29 C.F.R. § 825.305; Brown v. Automotive Components Holdings, LLC, 622 F.3d 685, 690 (7th Cir. 2010). It is undisputed that Pantoja did not comply with this policy. Monterey did not receive her FMLA request and physician certification before terminating Pantoja on August 5, 2009.

Pantoja argues that the requirement to submit the FMLA certification paperwork thirty days before the trip should be equitably tolled under the circumstances. Equitable tolling applies when a plaintiff cannot under the circumstances be reasonably expected to act within the deadline. Rager v. Dade Behring, Inc., 210 F.3d 776, 779 (7th Cir. 2000); see 29

C.F.R. § 825.305(b). She argues that under the circumstances, she could not file the FMLA certification papers before going to Mexico because she needed a statement from her mother's doctor to complete the forms. She needed to go to Mexico and take her mother to the doctor to get the statement. She further argues that she took reasonable steps to inform Monterey that she was exercising her rights under the FMLA. She informed Ybarra thirty days before the trip that she was going to stay in Mexico to care for her mother, she faxed the FMLA forms to Monterey while she was in Mexico, and she called and spoke to Ybarra while she was in Mexico. She also notes that no one at Monterey told her that the FMLA certification paper work had to be completed before she went on the trip.

    The circumstances may justify some tolling the time for filing the FMLA certification forms. Monterey did not enforce the requirement to submit FMLA requests and certification thirty days before the leave. Barajas did not tell Pantoja she had to turn in the FMLA request and certification paperwork before she took leave. Pantoja called and spoke to Ybarra. Monterey's HR Manager Ybarra, thus, knew that Pantoja was trying to send the paperwork.[7] This evidence tends to show that there was

---

[7]Ybarrra does not recall receiving a call from Pantoja, but at summary judgment, the Court must interpret the evidence in favor of Pantoja.

at least some confusion about the process for requesting FMLA leave and Monterey would accept Pantoja's variance from the written policy.

The Court, however, would be hard pressed to toll the time for filing the FMLA certification past July 27, 2009. By then, Pantoja knew that she was in trouble at work, she knew Ybarra had not received the July 13, 2009, fax and she knew that Ybarra wanted the FMLA certification paperwork. She had the ability to fax the documents and to telephone Monterey to confirm whether the fax was received. She called on July 27, 2009, but did not receive confirmation that the second fax was received. She did not attempt to contact Ybarra or anyone else at Monterey again from July 27, 2009, until she met with Ybarra on August 14 or 17, 2009. When viewed favorably to Pantoja, the evidence, at best, shows that the time to submit the FMLA certification could be extended to July 27, 2009.

Pantoja also argues that Monterey should be equitably estopped from denying that Pantoja engaged in protected activity. Equitable estoppel applies when the one party engages in wrongful conduct designed to induce the second party to delay or otherwise fail to take appropriate action and the second party reasonably and actually relies on that conduct to its detriment. See Rager v. Dade Behring, Inc., 210 F.3d 776, 779 (7th Cir. 2000); Hentosh v. Herman M. Finch University of Health Sciences/The Chicago Medical School, 167 F.3d 1170, 1174 (7th Cir. 1999).

The evidence does not support a claim for equitable estoppel. No evidence indicates that Monterey took any wrongful action to induce Pantoja to violate the Monterey FMLA certification policy. Ybarra discussed the leave request with Pantoja in early June 2009, some thirty days before Pantoja's scheduled vacation. Barajas gave Pantoja the FMLA request and certification paperwork. Barajas did not explain the process well and Pantoja did not understand that she was supposed to complete the paperwork before she left for Mexico. Barajas and Ybarra may have caused confusion, but the evidence does not show any wrongful conduct designed to induce Pantoja to violate the FMLA policy.

In addition, Pantoja does not present evidence of reasonable or actual reliance. The evidence, when read favorably to Pantoja, shows that Barajas and Ybarra created confusion, but Pantoja understood that she had to get her mother's doctor to complete the FMLA certification and she had to get that certification to Monterey. She told the doctor that she needed the certification to prove that she took the leave for a valid reason. Furthermore, after July 27, 2009, Pantoja could not have reasonably relied on any confusion caused by Barajas and Ybarra's conduct. By then, she knew she had to get the FMLA certification paperwork to Monterey. She has not presented evidence to show equitable estoppel. She further has not presented any evidence to support equitable tolling past July 27, 2009.

Ybarra waited nine days, until August 5, 2009, and still did not have the required FMLA certification. He gave her an opportunity and she failed to provide the certification. Even with any possible tolling, Pantoja did not engage in protected activity because she did not comply with Monterey's FMLA leave policy.

Moreover, even if the Court agreed that an issue of fact exists regarding whether she engaged in activity protected by the FMLA, she presents no evidence of a causal connection between the protected activity and her dismissal. Pantoja incorrectly states that she must only present evidence that her FMLA request was a motivating factor. That is no longer correct. In <u>Gross v. FBL Financial Services</u>, __ U.S.__, 129 S.Ct. 2343 (2009), the Supreme Court held that the statutory language controls the required showing for causation. The <u>Gross</u> case involved the Age Discrimination in Employment Act (ADEA). The Supreme Court determined that the statutory language required proof of but-for causation. <u>Gross</u>, 129 S.Ct. at 2350. The Seventh Circuit has determined that the decision in <u>Gross</u> requires proof of but-for causation in all civil rights and employment discrimination cases unless the statutory language otherwise indicates. <u>Serwatka v. Rockwell Automotion, Inc.</u>, 591 F.3d 957, 961 (7th Cir. 2010); <u>Fairley v. Andrews</u>, 578 F.3d 518, 525-26 (7th Cir. 2009). For example, Title VII of the Civil Rights Act of 1964 expressly contains the

"motivating factor" language. 42 U.S.C. § 2000e-2(m). The FMLA does not. Rather the FMLA states that "It shall be unlawful for any employer to interfere with . . . the exercise or . . . attempt to exercise, any right provided under this chapter." 29 U.S.C. § 2615(a). The FMLA also states, "It shall be unlawful for any employer to discharge . . . any individual . . . because such individual" opposes a violation of the FMLA or alleges that a violation of the FMLA occurred. 29 U.S.C. § 2615(b). The language in either section of the FMLA lacks any "motivating factor" language. The employer must interfere with the exercise of the right or must discharge the individual because an individual opposed a violation of the FMLA. This direct language implies but-for causation. In light of the <u>Gross</u> decision and the subsequent Seventh Circuit decisions, the Court must apply a but-for causation to FMLA cases.

Pantoja fails to present evidence of causation. The evidence shows that Monterey fired her because Ybarra did not receive the required FMLA certification forms. When Pantoja spoke to Ybarra on or about July 27, 2009, he did not fire her; he told her that he had not received her July 13th fax and did not have her FMLA certification. She attempted to fax the paperwork again because she understood that she had to get the FMLA certification forms to Monterey. Ybarra waited another nine days, until August 5, 2009, before firing her. When Pantoja returned, Ybarra asked for

proof of that she sent the faxes; he wanted proof that she tried to send the FMLA certification forms. No evidence shows that Monterey fired her because she wanted to take a leave of absence under the FMLA; rather, the evidence shows that Monterey fired her because she did not comply with Monterey's FMLA policy. An employer may properly fire a person for not following the employer's FMLA procedures. See Brown v. Automotive Components Holdings, LLC, 622 F.3d 685, 690 (7th Cir. 2010).[8]

Pantoja argues that the timing of her firing tends to show causation. Timing alone generally is insufficient to show causation. See e.g., Cole v. Illinois, 562 F.3d 812, 816 (7th Cir. 2009). Moreover, timing here does not show hostility to FMLA requests. The undisputed evidence shows that Ybarra waited and gave Pantoja a chance to file her FMLA certification.

Pantoja also argues that Monterey was hostile to FMLA requests generally. She attaches an excerpt from a deposition of Ybarra in another case, Perez-Martinez v. Monterey Mushrooms, Case No. 10-cv-1029. Pantoja Memorandum, Exhibit G, Excerpt of Deposition of Ernesto Ybarra in Case No. 10-cv-1029 (*Perez-Martinez* Ybarra Deposition). Ybarra states in this deposition that Maria Perez Martinez (the plaintiff in Case no. 10-cv-1029) was an employee at Monterey. Perez-Martinez's supervisors

---

[8]Pantoja's failure to provide certification would doom her claim under an FMLA interference theory as well as a retaliation theory. See Brown, 622 F.3d at 690.

complained that Perez-Martinez used FMLA leave to extend her vacations. *Perez-Martinez* Ybarra Deposition, at 53. Ybarra directed the supervisors to put the complaint in writing,

> What I counseled the supervisors, was to write it up, and – just so we could send a message that we were aware that ,you know, that she needed to – that were aware of the extended leaves, with using FMLA to extend her vacation requests.

Id. at 53-54. The supervisors did not follow Ybarra's advice and did not discipline Perez-Martinez. Id. at 54. Pantoja argues that this excerpt shows that Ybarra was hostile to taking FMLA leave. The Court disagrees. At best, the excerpt shows that Ybarra wanted supervisors to document abuses of FMLA leave and to discipline employees for abusing FMLA leave. The excerpt does not show hostility to FMLA leave requests.

Pantoja argues that Monterey's decision not to impose progressive discipline in accordance with its disciplinary policy shows a causal connection between Pantoja's assertion of FMLA rights and her discharge. The Court again disagrees. At best, the evidence shows that Ybarra made an example of Pantoja because he wanted employees to know that they had to provide a doctor's certification for FMLA leave. Ybarra did not fire Pantoja when she did not show up on July 13th; he did not fire her when she called on or about July 27th. He told her he did not have the FMLA certification. The evidence, at best, shows a decision to make an example

of Pantoja because she did not provide the required certification. An employer is entitled to require certification for FMLA leave. 29 C.F.R. § 825.305. An employer may also fire a person for not following the employer's procedures. See Brown, 622 F.3d at 690.

Pantoja argues that Barajas' efforts to contact Pantoja after July 13, 2009, was just a cover-up. The Court again disagrees. Ybarra and Barajas knew that Pantoja wanted to take FMLA leave, but she had not turned in any paperwork, her vacation was over, and she had not contacted Monterey. Barajas used the contact information that Monterey had on file to try to notify Pantoja and tell her to contact Barajas to resolve the matter. Pantoja called Ybarra on or about July 27, 2009, and told him she was in Mexico, but by that time Barajas had already called and sent the July 20, 2009, letter. The efforts to contact Pantoja at her Illinois residence does not prove any wrongful intent.

Lastly, Pantoja argues that what matters is that she tried to send the FMLA certification paperwork. Her good faith efforts should be enough. The Court again disagrees. She is seeking damages and other remedies from Monterey. She must present evidence Monterey violated federal law, not that she acted in good faith. She must present evidence that Monterey discharged her because she exercised her rights under the FMLA. She did not make that presentment. The evidence shows that Monterey fired her

because she did not provide the FMLA medical certification. She did not submit the FMLA certification before she left, nor after she left on July 6, 2009. Monterey did not receive the FMLA certification before she was fired on August 5, 2009. Pantoja concedes that Monterey did not receive her faxes. Her good faith efforts are not sufficient to impose liability on Monterey.

WHEREFORE, Defendant Monterey Mushrooms, Inc.'s Motion for Summary Judgment (d/e 23) is ALLOWED. Summary judgment is entered in favor of Monterey Mushrooms, Inc. and against Elena Pantoja. All pending motions are denied as moot. THIS CASE IS CLOSED.

ENTER: October 6, 2011

        *s/ Byron G. Cudmore*
        BYRON G. CUDMORE
   UNITED STATES MAGISTRATE JUDGE